[Cite as *Vent v. Vent*, 2012-Ohio-5946.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY


MICHELLE L. VENT
NKA MICHELLE L. HICKS,                        CASE NO. 16-12-05

    PLAINTIFF-APPELLANT,

  v.

WILLIAM J. VENT,                                **O P I N I O N**

    DEFENDANT-APPELLEE.


**Appeal from Wyandot County Common Pleas Court
Domestic Relations Division
Trial Court No. 03-DR-0133**

**Judgment Affirmed**

**Date of Decision:  December 17, 2012**


**APPEARANCES:**

    *Kelle M. Saull* **for Appellant**

    *Agnes A. Pfeifer* **for Appellee**

**WILLAMOWSKI, J**.

{¶1} Plaintiff-Appellant, Michelle Vent, nka Michelle Hicks (hereinafter, "Mother"), appeals the judgment of the Wyandot County Court of Common Pleas, Domestic Relations Division, denying her motion for reallocation of parental rights and responsibilities in which she claimed that it was no longer in the best interest of the children that they remain in the custody of Defendant-Appellee, William Vent ("Father"). On appeal, Mother contends that the trial court erred when it found that there was no change of circumstances warranting a modification of custody; when it found that it was not in the best interest of the children to modify custody; and when it did not increase Mother's parenting time or allow her the right of first refusal to spend time with the children. For the reasons set forth below, the judgment is affirmed.

{¶2} The parties were married in 1995, and two sons were born as issue of their marriage, Wesley in 1999 and Mason in 2002. The parties were divorced on March 3, 2004, and Mother was named the residential parent of the boys.

{¶3} In 2009, when Wesley and Mason were 10 and 7 years old, Father filed a motion to modify parental rights and responsibilities, requesting that he be named the residential parent. The case proceeded to trial but, at its conclusion, the parties informed the court that they had reached a mutual agreement. A consent judgment entry was filed on July 21, 2009, agreeing that Father would be the

residential parent and legal custodian, with Mother having companionship every other weekend, every Wednesday after school until 7:30 p.m., and alternating weeks during the summer.

{¶4} Since that modification, Mother claims that the children's behavior and their performance in school have "regressed." On April 1, 2011, Mother filed a motion to reallocate parental rights and responsibilities, asking that she again be named the residential parent.

{¶5} Mother claims that both boys' grades have dropped considerably and that they do not get appropriate help with their homework from Father. She contends that they have exhibited numerous behavior problems, resulting in detentions, visits to the vice principal's office, and that they are considered "disruptive" by teachers and the school bus driver. Mother also expresses concerns about the boys' health and hygiene, claiming that they are not always clean and that they have suffered from ringworm, acne, and athlete's foot while under their Father's care.

{¶6} Mother also believes that the children's schedule contributes to their problems in that they do not get enough sleep because they get up at 5:30 in the morning to go to their grandmother's house to catch the school bus. After school, the children also go to their grandmother's home with other cousins. She contends that they "bounce from family member to family member" and are watched by aunts or other extended family members. Mother believes that she can better

provide the stability and educational supervision that the children need because she is a certified teacher. She only works part-time, as a substitute teacher, so she claims she has more time and is better able to supervise the children.

{¶7} Father maintains that the boys are happy, healthy and well-cared for. He claims that they are doing all right in school and that the drop in their grades is due to a difference between the grading scales used by the different school systems and because the work has gotten harder now that the boys are in higher grades. He claims that the behavioral issues complained of by Mother are exaggerated and blown out of proportion, and that the children are merely typical boys who are generally well-behaved, well-liked, and demonstrate respect for others. The boys are active in sports, and Father is the coach of Wesley's basketball team. The medical issues were common ailments that were not the result of any neglect and they were appropriately treated. Father contends that the boys live a typical lifestyle of children who live on a farm; they have farm animals that they care for at their grandmother's home; they are assigned daily chores; they're involved in sports and 4-H; and they have a great relationship with their cousins and many extended family members, who all live nearby.

{¶8} Louanne Hufford, who had served as CASA guardian ad litem ("GAL") for these children on two prior occasions, was appointed as GAL. The trial court also granted Mother's motion requesting the appointment of Randy

Hoffman as an attorney guardian ad litem (also, "GAL"). Both GALs submitted reports to the trial court

{¶9} A three-day trial was held before the court on March 6, 7, and 8, 2012. The trial court heard testimony from Mother and Father; several of the children's grandparents, aunts, and uncles, including Father's sister-in-law, Laurie Vent, who was the principal of Mason's school; the school's head basketball coach; Mason's 2nd grade and 4th grade teachers; Wesley's 7th grade math, reading, and history teachers; the assistant principal; the school guidance counselor; another counselor who had been meeting with Mason; the school bus driver; and both GALs.

{¶10} Ms. Hufford's GAL investigations and report were very extensive and detailed and concluded that "Wesley and Mason Vent are two well-loved children by not only their parents but by relatives and friends as well, * * * [and that the parents] "have raised two very bright, handsome, healthy, well respected young men." (Defendant's Ex. V) Ms. Hufford noted that the children loved and wanted to spend time with both parents, and that both parents were doing a good job in raising the boys, even though they had different parenting styles. Ms. Hufford strongly suggested that the parents try to work together more and improve their communication so that the children could "have the best of the two worlds." In conclusion, she recommended that Father remain the residential parent. (*Id.*)

{¶11} Mr. Hoffman's GAL report was more abbreviated, and did not recommend placement with one parent over the other. His report stated:

> It is unfortunate that two parents as involved in their children's lives would be in the position of one "winning" and one "losing." It is also unfortunate that two boys are so stressed at being in the middle of a battle between two parents of different ideals and approaches.

(Plaintiff's Ex. 30) When questioned at trial, Mr. Hoffman stated that he believed that, if the trial court found there had been a change in circumstances, it would be in the best interests of the children to live with Mother, given her teacher training, part-time work schedule, and the program she was following. (Tr. 612-613)

{¶12} The trial court also interviewed the children in chambers individually. Wesley and Mason were 13 and 10 years old respectively at the time of the trial and the court found that both of the boys were competent and could express a preference as to their residential parent. The trial court reported that:

> Each was adamant about remaining in the custody of their father. It is noted that each boy relayed the same sentiment to each of the Guardians Ad Litem * * *.

(3/21/12 J.E., p. 2)

{¶13} After considering the extensive amount of testimony and evidence, the trial court issued its opinion, giving a detailed analysis showing its consideration of all of the evidence. The trial court found that Mother failed to show that a change of circumstances of sufficient significance existed to modify the designation of residential parent and overruled Mother's motion for a change of custody. And, although noting that it was not necessary to do so, the trial court

also found that it would not be in the best interests of the children to modify the current residential parent status.

> The children are well liked, well-loved and happy, but for these proceedings. They are entrenched in a loving and supportive extended family. In addition to sports, the children are involved in 4-H and very much enjoy this activity. They have responsibilities for animals that are kept at their grandmother's home. At grandmother's home they also have the opportunity to meet with many cousins and engage in activities such as walking trails, bicycling, camping, and riding in the tractor with dad. They do not want for food, clothing or attention. Father coaches his sons and Mother appears at events and cheers for her children. The biggest negative factor in these children's lives at this point, is the fact that their parents refuse to communicate with one another, particularly when it involves the interest of their children.

(3/21/12 J.E., p. 8)

{¶14} It is from this judgment that Mother now appeals, raising the following three assignments of error for our review.

**First Assignment of Error**

**The Court's finding that there was no change of circumstances was contrary to law and against the manifest weight of evidence.**

**Second Assignment of Error**

**The Court's finding that it was not in the best interest of the children to reallocate parental rights and responsibilities was contrary to law and against the manifest weight of evidence.**

**Third Assignment of Error**

**The Court erred by not increasing [Mother's] parenting time and/or allowing for a first right of refusal and same was contrary to law and against the manifest weight of evidence.**

{¶15} The modification of parental rights and responsibilities is controlled by R.C. 3109.04(E). This statute creates a rebuttable presumption in favor of retaining the residential parent. R.C. 3109.04(E)(1)(a); *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604 (7th Dist.2000). Therefore, a court shall not modify a parenting decree allocating parental rights unless it finds that, based on facts that have arisen since the decree, there has been a change in circumstances of the child or the child's residential parent and modification of the decree is necessary to serve the child's best interest. R.C. 3109.04(E)(1)(a). Additionally, the court must find that one of the factors listed in R.C. 3109.04(E)(1)(a)(i), (ii), and (iii) applies. R.C. 3109.04(F) provides a non-exclusive list of relevant factors to be utilized in helping to determine what would be in a child's best interest.

{¶16} Custody issues are some of the most difficult decisions a trial judge must make. Therefore, those decisions rest within the sound discretion of the trial court. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A court's decision regarding an award of custody is subject to reversal only upon a showing of an abuse of that discretion. *Id.*; *Trickey v. Trickey*, 158 Ohio St. 9, 13–14 (1952). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Bruce v. Bruce*, 3d Dist. No. 9–10–57, 2012–Ohio–45, ¶ 13, citing *State v. Boles*, 187 Ohio App.3d 345, 2010–Ohio–278, ¶ 17–18 (2d Dist.), citing Black's Law Dictionary (8 Ed.Rev.2004) 11.

"A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious."  *Pater v. Pater*, 63 Ohio St.3d 393 (1992).

{¶17} The reason for this standard of review is that the trial judge is in the best position to view the demeanor, attitude, and credibility of each witness and to weigh the evidence and testimony.  *Davis*, 77 Ohio St.3d at 418.  This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.  *Id*. at 419.

> [I]t is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * *

(Citations omitted.)  *Miller*, 37 Ohio St.3d at 74.

{¶18} In applying an abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. *Hay v. Shafer*, 3d Dist. No. 10–10–10, 2010–Ohio-4811, ¶ 14, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, (1989).  When reviewing a change of child custody proceedings, an appellate court should be guided by the presumption that trial court's findings were correct. *Miller* at 74.

{¶19} In her first assignment of error, Mother claims that the trial court's finding that there was no change of circumstances was contrary to law and against the manifest weight of evidence. She argues that there was considerable evidence that there has been a significant change of circumstances concerning the children in that their grades had deteriorated, they were exhibiting behavioral problems, and their schedule deprived them of sleep and stability.

{¶20} In order for a trial court to modify a prior allocation of parental rights and responsibilities, it must make a threshold finding that a change in circumstances has occurred, and, if so, it must then determine that the modification is in the best interest of the child. R.C. 3109.04(E)(1)(a); *Wooten v. Schwaderer*, 3d Dist. No. 14-08-13, 2008-Ohio-3221, ¶3. The statute's language does not require a "substantial" change in order to warrant a change of custody, but "the change must be a change of substance, not a slight or inconsequential change." *Davis*, 77 Ohio St.3d at 418; *LaBute v. LaBute*, 179 Ohio App.3d 696, 2008 -Ohio- 6190, ¶ 7 (3d Dist.).

{¶21} The Ohio Supreme Court has consistently affirmed the reasoning and intent behind this threshold requirement.

> The requirement that a parent seeking modification of a prior decree allocating parental rights and responsibilities show a change of circumstances is purposeful: "'The clear intent of [R.C. 3109.04(E)(1)(a)] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child a "better" environment. The statute is an attempt to

> provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'" *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 445 N.E.2d 1153.

*Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 34.

{¶22} Mother's arguments are a classic example of the situation cited above wherein she believes that she can provide the children with a "better environment" by providing more competent help with the children's homework and establishing what she considers to be a better schedule and a more structured environment.

{¶23} On appeal, Mother provided numerous excerpts from the record indicating that the children's grades were poor and that the children had disciplinary problems at school and on the bus. However, all of the examples cited by Mother were taken out of context, or they were specifically picked to support her position. Father cited just as many, if not more, examples from the record where the teachers and others testified that the children were doing well, that their problems were somewhat typical for boys of their age, and that their issues were not nearly as problematic as Mother depicted them to be.

{¶24} For example, the assistant principal testified that Wesley had received a number of disciplinary referrals during the past two years. (Tr. 334) However, in reviewing each of them, it turns out that many were for relatively minor infractions, such as chewing gum, tardiness between classes, and staying in

the restroom too long. (Tr. 335) The assistant principal further testified that Wesley was a polite child, he was "very respectful," and that he had chosen Wesley to be a lunch room helper because Wesley was considered a "quality" student and was dependable. (Tr. 356-358) The history teacher testified that Wesley could sometimes be disruptive, but that it was normal for 7th grade boys to be disruptive at times. (Tr. 176) And, although the school bus driver had turned in a "conduct report" for Wesley, she stated that "he's a typical boy and they all get rambunctious," and that she hasn't had any trouble with him since the report. (Tr. 204)

{¶25} While it is important that the parents emphasize the necessity of following all of the rules and behaving properly, the record certainly does not indicate that the children are heading down the path to juvenile delinquency. In fact, most witnesses testified that the children were usually very good, dependable, trustworthy, friendly, and respectful. There was no evidence in the record that Father was doing anything improper or that he failed to appropriately discipline the boys, even though his parenting style and priorities may be different than Mother's.

{¶26} Likewise, Mother's issues regarding the children's grades only tell one side of the situation. While we can understand Mother's concerns with some of the poor grades that the boys received in some subjects and their unsatisfactory homework history, there was also evidence in the record indicating that they had

demonstrated improvement in some areas and that their academic performance when they were with Mother may not have been significantly different that when they were with Father. Although it was problematic that the testimony indicated that the boys were not always working up to their potential, their school performance did not rise to a level of major concern to the educators who testified or to the trial court. *See Klein v. Botelho*, 2d Dist. No. 24393, 2011-Ohio-4165, ¶ 33-34 (finding that the children's purported behavior problems and poor grades did not constitute a change of circumstances sufficient to justify a change in custody). In fact, Mason's current teacher read from her notes, stating that, "Mason is a real pleasure to have in class" and that he has really improved in his reading fluency and in doing his assignments. (Tr. 738)

**{¶27}** The children's teachers further testified that the boys came to school well-groomed, clean and appropriately dressed. And, the record indicated that Father made sure that the children were receiving necessary medical and dental care. The trial court found that "Mother, it seems, is the only individual to have concerns regarding the children's hygiene and health and has failed to prove that these concerns provide the necessary 'change of circumstances' requiring the Court to consider a change of residential parent." (3/21/12 J.E., p. 4)

**{¶28}** Mother acknowledged that there had not been any changes in the Father's circumstances since 2009, and that the only changes in circumstances that

she was alleging regarded issues concerning Mason and Wesley. (Tr. 510)

Mother testified:

> Q.     Wouldn't you agree today that there's been no change in circumstances regarding [Father] from 2009 forward?
>
> A.     Just him?
>
> Q.     Regarding [Father], true.
>
> A.     Not that I know of.
>
> Q.     So is it your allegation that the only change of circumstances that we're dealing with regarding this hearing is issues regarding both Mason and Wesley?
>
> A.     Yes.
>
> * * *
>
> Q.     And, isn't it true that [Father] has done nothing that you didn't anticipate nor were you aware of insofar as his situation as he sits here today?
>
> A.     Yes.

(Tr. 511)

{¶29} We do not find that the trial court abused its discretion when it determined that there was not sufficient evidence in the record to demonstrate a change of circumstances that would require the trial court to consider changing the residential parent. The trial court's detailed decision was thoroughly documented with references to the record in support of its position. The trial court has been involved with these parties, and in making decisions concerning the best interest

of these children, since 2003. The trial court was in a superior position to evaluate the weight of the evidence and judge the credibility, demeanor and motivation of the various witnesses. *See Malone v. Malone*, 3d Dist. No. 13-10-39, 2011-Ohio-2096, ¶ 14. It is not our position to weigh the evidence or substitute our judgment for that of the trial court. *See Miller*, 37 Ohio St.3d at 74; *Daniels v. Daniels*, 3d Dist. No. 11-08-10, 2009-Ohio-784, ¶ 15.

**{¶30}** We find no abuse of discretion by the trial court. Therefore, the first assignment of error is overruled.

**{¶31}** In the second assignment of error, Mother asserts that the trial court's statement that it would not be in the best interest of the children to reallocate parental rights and responsibilities was contrary to law and against the manifest weight of the evidence. This argument is based on the assumption that there would be the required preliminary finding of a change of circumstances, as required by statute. *See* R.C. 3109.04(E)(1)(a). Having affirmed the trial court's threshold decision finding no change in circumstances, there is no need to examine whether or not a change of custody would be in the children's best interests. Mother's second assignment of error is overruled.

**{¶32}** In the third assignment of error, Mother submits that the trial court erred by not increasing her parenting time with the children and/or allowing for a first right of refusal to enable her to watch the children when Father is not available. Mother argues that it would be in the children's best interest to have

increased parenting time with her, especially when she is available to spend time with them before and after school, when they are being cared for by other relatives.

{¶33} Mother correctly stated that it was not necessary for a court to find that there has been a change of circumstances in order to modify visitation rights, citing to *Braatz v. Braatz*, 85 Ohio St.3d 40, 44-45, 1999-Ohio-203. However, as also stated in *Braatz v. Braatz*, "'visitation' and 'custody' are related but distinct legal concepts." *Id.* at 44. Pursuant to Civ.R. 7(B), all motions are to state with particularity the grounds and the relief sought. Mother never requested a modification of her visitation or to have the first right of refusal. Her only motion sought sole custody of the children.

{¶34} Mother claims that many of the factors set forth in R.C. 3109.051 are applicable to demonstrate that it would be beneficial to the children to have additional parenting time with her. We do not know what the trial court might have found concerning R.C. 3109.051 because the issue of modifying visitation was never before the trial court. However, we do know that the trial court and both GALs emphatically stated that it would be in the children's best interest if the parties would communicate and cooperate more with each other, and if the children were not repeatedly subjected to contentious court proceedings. Given the ages of the children, their multiple activities, and their busy schedules, perhaps

this is an area where the parties can implement the recommendations of the trial court and the GALs, on behalf of their children.

**{¶35}** The trial court did not abuse its discretion by not sua sponte addressing an issue that was never raised. Mother's third assignment of error is overruled.

**{¶36}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed.*

**SHAW, P.J. and ROGERS, J, concur.**

**/hlo**