[Cite as *Brumfield v. Brumfield*, 2016-Ohio-8395.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STEVEN BRUMFIELD,

    PLAINTIFF-APPELLANT,             CASE NO. 9-16-26

    v.

MANDI BRUMFIELD,                  O P I N I O N

    DEFENDANT-APPELLEE.

---

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2014DR0308

**Judgment Affirmed**

Date of Decision:   December 27, 2016

---

APPEARANCES:

    *Cassie L. Screngi* for Appellant

**SHAW, P.J.**

{¶1} Father-appellant, Steven Brumfield ("Steven"), brings this appeal from the April 4, 2016, judgment of the Marion County Common Pleas Court, Family Division, terminating the previously ordered Shared Parenting Plan, which allocated parental rights and responsibilities between Steven and mother-appellee, Mandi Brumfield ("Mandi"). On appeal, Steven challenges the trial court's decision designating Mandi as Residential Parent and Legal Custodian of the parties' three children and determining that Steven should exercise parenting time pursuant to the local rule, with some stated modifications.

*Relevant Facts and Procedural History*

{¶2} Steven and Mandi were married on May 21, 2005. They had two children together: D.B., born in September of 2006 and C.B. born in December of 2008. Mandi also had one biological daughter that was born outside the marriage in October of 2003. That daughter, M.B., was adopted by Steven. Thus altogether the parties had three children.

{¶3} On December 16, 2014, Steven filed for divorce. On December 31, 2014, Mandi filed an answer and counterclaim also seeking a divorce. Although there was fairly extensive litigation related to the divorce, the parties ultimately settled all of their disputed issues resulting in a final decree of divorce and a shared

parenting plan. The final decree and shared parenting plan was filed August 26, 2015.

{¶4} Shortly thereafter, on September 14, 2015, Steven filed a motion for contempt arguing that Mandi was not complying with the shared parenting plan as Mandi was not sending M.B. for Steven's parenting time and Mandi was interfering with Steven's parenting time with the other children.[1]

{¶5} On November 6, 2015, Steven filed a "Motion for Reallocation of Parental Rights and Responsibilities, Motion for Modification, and Motion for Contempt." (Doc. No. 158). Steven requested that he be named residential parent and legal custodian of the parties' children.

{¶6} On November 10, 2015, Mandi filed a motion for contempt against Steven arguing that he had, *inter alia*, not abided by the shared parenting plan and that he had failed to pay spousal support as agreed in the divorce decree.

{¶7} On March 9, 2016, the trial court held a hearing on the pending motions, including the motion for reallocation of parental rights and responsibilities. At the hearing, fourteen witnesses provided testimony, including Steven and Mandi. The parties agreed on a couple of primary issues in their testimony, namely that they both wanted the shared parenting plan terminated and that since the final decree and

---

[1] Steven argued a number of additional issues in contending that Mandi was in contempt, which are unrelated to this appeal, such as Mandi not cooperating with an insurance claim, Mandi not cooperating in listing the marital residence for sale, and Mandi improperly allowing the man she was dating, Justin, to stay at her residence.

the shared parenting plan had been filed, there had been a complete breakdown of communication between the parties. Essentially the parties were not speaking to each other at all. Additionally, according to testimony provided at the hearing the parties' oldest child, M.B., had not been sent on visitation with Steven since an incident in early September of 2015.

{¶8} As to the incident with M.B., Mandi testified that in September of 2015 Steven came to the dance studio where M.B. danced and "jerked her out" of the class. (Tr. at 58-59). Steven testified that he did not take M.B. out in front of everyone in the class. Nevertheless, Mandi testified after the dance studio incident M.B. refused to spend time with Steven despite Mandi punishing M.B. for not going to Steven's by doing things such as taking M.B.'s phone away and grounding her.

{¶9} M.B.'s therapist, Debbie Merold of the Marion Area Counseling Center, testified at the hearing that M.B. had been "diagnosed" with "PTSD" as a result of the dance studio incident and other incidents involving Steven. Merold testified that M.B. was in fear of Steven coming to her school or the dance studio and "do[ing] something." (Tr. at 399). Merold testified that nearly all of M.B.'s ten worst memories involved Steven, which included an alleged domestic violence that M.B. purportedly witnessed against Mandi and an incident where Steven was "forceful" with one of the other children. (Tr. at 332). Merold also testified that the

children informed her of a situation where C.B. was fearful of Steven to the point where he had "pee[d] his pants." (Tr. at 333).

{¶10} A woman named Ms. Cook[2] testified at the hearing that after the dance studio incident Steven refused to allow M.B. to go on a dance trip to California that Mandi had already paid for. Ms. Cook testified that she attempted to talk to Steven on the phone about the trip and Steven was cruel to her in that conversation, calling her a "bitch" and a "fucking cunt." (Tr. at 373).

{¶11} There was also testimony of another alleged incident involving Steven after the divorce decree wherein Steven got into a fight with Mandi's boyfriend Justin Carley at a Wal-Mart. As a result of that incident, it seems from the testimony that Steven was charged with, and convicted of, Disorderly Conduct.

{¶12} However, Steven testified at the hearing that the incidents referenced did not occur as alleged and that Mandi had been unreasonable and uncooperative for a number of reasons since the divorce decree was entered. Steven testified that Mandi would not let Steven's mother pick up the children for Steven's visitation time, that Mandi's boyfriend Justin was occasionally present when he picked up the children, and that Justin had a gun visible on his hip at those exchanges. Steven testified that Mandi would force the children to change their clothes before they

---

[2] The transcript actually indicates that for a small portion of time there was no recording of the courtroom proceedings. Thus we do not have the beginning of "Ms. Cook's" testimony and we actually only know her last name because she was addressed by counsel in this manner during questioning.

came to his residence because she was afraid he would not send the clothes back, that Mandi had called the police and children's services on him and that the investigations led to no charges or substantiated findings, and that Mandi would not communicate with him. Steven testified that at times Mandi also did not send one of the other children for his parenting time in addition to not sending M.B.

{¶13} Steven's mother, Mary, testified at the hearing that Steven was a good, loving father. She also testified that Mandi ignored her when she attempted to pick up the children for Steven's parenting time. Steven's aunt, Thelma, testified that Mandi's boyfriend Justin Carley had sent her antagonistic messages through Facebook, including a picture of Justin with his arms around M.B. with a caption saying, "safe."

{¶14} Justin Carley's wife testified at the hearing. She testified that although she was still married to Justin, they were separated. She testified that Justin was violent, had a volatile personality, and that he had hit her and her children before.

{¶15} James Castle, a retired pastor and neighbor of Mandi's, testified at the hearing that he had seen Steven have loving and kind interactions with the children over the years. Castle testified to an incident where he believed Mandi's boyfriend Justin drove through his yard and another incident where Justin got out of his vehicle

with a gun in his hand and was walking around the front yard. Castle testified that he believed Justin stayed at Mandi's house multiple nights per week.[3]

{¶16} Rhonda Burggraf, a family court services coordinator, testified at the hearing that she was involved with the parties and their children in this case. She testified that she had concerns about Steven and that she had concerns about Mandi not facilitating a relationship between the children and Steven. Although she was not a GAL speaking for the children, Rhonda recommended terminating the shared parenting plan and naming Mandi as residential parent because the children would feel safer with Mandi. Rhonda testified that she recommended counseling for all parties and that Steven should look into, what she termed, his anger management issues.

{¶17} Ultimately, both Steven and Mandi testified that they wanted the shared parenting plan terminated. Both wanted to be named residential parent. At the conclusion of the hearing, the matter was submitted to the trial court for a decision.

---

[3] Steven was required to pay Mandi spousal support as part of the divorce decree so long as she was not cohabitating with anyone. There was a significant amount of testimony related to Mandi's relationship with Justin, but there was no issue before the trial court seeking to vacate the spousal support award due to cohabitation. Any testimony related to Mandi's relationship with Justin seemed directed more toward contempt, and tangentially to the termination of shared parenting due to Justin's interactions with the children.

{¶18} On April 4, 2016, the trial court issued its final judgment on the matter. After stating that it had considered the evidence presented and the credibility of the witnesses who testified, the trial court conducted the following analysis.

> **The evidence is clear. These parents are unable to cooperate and communicate with each other in order for them to participate in a shared parenting relationship regarding their minor children. Less than ten (10) days following the filing of the Shared Parenting Plan and Divorce Decree Orders this situation disrupted resulting in Plaintiff last seeing his minor daughter, [M.B.], for parenting time on September 4, 2015, and continuing through the date of this hearing. Both parents testified they wanted the Shared Parenting Plan terminated and there was absolutely no communication between them. The behavior of both parents has been totally inappropriate and contrary to the best interest of their minor children. This Court considered the removal of the children from both parents and placement in foster care, and is not ordering same at this time due to the additional trauma it would inflict upon the children. Both parents have and continue to include the children in the conflict which exists between the parents, and this appears to include family and extended relationships of both. The parents have no regard for how their behaviors are effecting the children and this behavior must stop immediately.**

(Doc. No. 179). Based on its reasoning the trial court terminated the shared parenting plan, stating that it was in the best interests of the children. The trial court then named Mandi the residential parent for the children and gave Steven parenting time according to the local rule, with some modifications.

{¶19} Notably, the trial court also found both parties in contempt of the divorce decree for various reasons, but neither party appealed the contempt findings. Rather, Steven appeals the trial court's decision to designate Mandi as residential

parent of the parties' children. He asserts the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED CUSTODY TO APPELLEE.**

**{¶20}** In his assignment of error, Steven argues that the trial court abused its discretion in awarding custody to Mandi rather than himself. Specifically, he argues that Mandi had not been honoring his court-ordered parenting time, that she was attempting to "poison" the children against him, and that he was more likely to facilitate parenting time between the parties.

**{¶21}** Decisions related to child custody matters rest within the sound discretion of the trial court and the "utmost deference" must be given to the trial court's decision. *Barto v. Barto,* 3d Dist. Hancock No. 5–08–14, 2008–Ohio–5538, ¶ 25; *Krill v. Krill,* 3d Dist. Defiance No. 4–13–15, 2014–Ohio–2577, ¶ 26. "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Bechtol v. Bechtol,* 49 Ohio St.3d 21 (1990), syllabus; *see also Barto v. Barto,* 3d Dist. Hancock No. 5–08–14, 2008–Ohio–5538, ¶ 25. Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody. *Barto* at ¶ 25. An abuse of discretion suggests the

trial court's decision is arbitrary, unreasonable, or unconscionable. *See Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶22}** "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Walton v. Walton,* 3d Dist. Union No. 14–10–21, 2011–Ohio–2847, ¶ 20, citing *Clark v. Clark,* 3d Dist. Union No. 14–06–56, 2007–Ohio–5771, ¶ 23, citing *In re Brown,* 98 Ohio App.3d 337 (3d Dist.1994). "Therefore, '[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' " *Clark* at ¶ 23, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 81 (1984).

**{¶23}** In this case both parties expressed their desire to terminate the previously entered shared parenting plan. When terminating a shared parenting plan, rather than modifying it, the trial court does not have to find that a change in circumstances occurred. *See Drees v. Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197; *Warner v. Thomas*, 3d Dist. Shelby No. 17-14-04, 2014-Ohio-3544, ¶¶ 9-10.[4] Instead, the trial court must find that "shared parenting is not in the best interest of the children." R.C. 3109.04(E)(2)(c).

---

[4] Although the trial court did not have to find a change in circumstances, the trial court did make the superfluous finding that the circumstances had changed in this case.

{¶24} Revised Code 3109.04(F) contains factors for a trial court to consider when evaluating what custody arrangement is in the children's best interests. It reads as follows.

**(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:**

**(a) The wishes of the child's parents regarding the child's care;**

**(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d) The child's adjustment to the child's home, school, and community;**

**(e) The mental and physical health of all persons involved in the situation;**

**(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * * whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code * * * whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

**(2)   In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:**

**(a)   The ability of the parents to cooperate and make decisions jointly, with respect to the children;**

**(b)   The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;**

**(c)   Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;**

-12-

**(d)  The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;**

**(e)  The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.**

**{¶25}** In this case the trial court specifically stated that terminating the shared parenting plan was necessary to serve the children's best interests. In making that finding the trial court noted that it was particularly concerned with the lack of cooperation and communication between the parties.

**{¶26}** In arguing against the trial court's decision on appeal, Steven contends that R.C. 3109.04(F)(1) factors (a), (b), (d), (e), (g), (h), and (j), were all a "wash" in this case, not favoring either party. Thus he argues that discussion should focus on factors (c), (f), and (i), which he feels favor naming him as residential parent. Steven claims that under factors (f) and (i) he had facilitated parenting time and Mandi had not, particularly as it related to M.B. As to factor (c), Steven contends that Mandi's boyfriend had a negative impact on the children.

**{¶27}** While there were indications in the record that Mandi could have communicated better and done more to facilitate parenting time, and there were certainly questions raised regarding the temperament of Mandi's boyfriend, there were also certainly issues with Steven presented in the testimony that would support the trial court's decision.

-13-

{¶28} Moreover, the caseworker from family services testified that she believed designating Mandi as residential parent was in the children's best interest as it was where they would feel safest, indicating pursuant to factor (e) it was best for the mental health of the children. This was perhaps furthered by the testimony of M.B.'s counselor, who indicated that M.B. was in fear of Steven. Additionally, there was some indication from the family services coordinator that at least one of the other children may be in some fear of Steven as well.

{¶29} Furthermore, the trial court was able to see and hear the testimony of the witnesses and judge their credibility, which should be given particular emphasis in this case as both parties had conflicting stories related to various events leading to the utter breakdown in communication. In addition, the trial court was able to observe the parties themselves, which could be extremely beneficial in evaluating the demeanor of which parent was appropriate to designate as residential parent, and we must accord deference to the trial court's decision.

{¶30} In sum, there was testimony weighing for and against designating either party as residential parent in this case. However, both parties desired to terminate shared parenting as they could not communicate and the shared parenting plan was not working. Thus the trial court had to exercise its discretion and make a difficult decision as to what was in the best interest of the children and the trial court elected to designate Mandi as residential parent of the children. As there is evidence

in the record to support the trial court's decision, we cannot find that the trial court abused its discretion. Accordingly, Steven's sole assignment of error is overruled.

{¶31} For the foregoing reasons Steven's assignment of error is overruled and the judgment of the Marion County Common Pleas Court, Family Division, is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**