[Cite as *Brumfield v. Brumfield*, 2018-Ohio-901.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STEVEN BRUMFIELD,

    PLAINTIFF-APPELLEE,                  CASE NO. 9-17-35

    v.

MANDI BRUMFIELD,                     **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2014 DR 0308

Judgment Affirmed

Date of Decision:     March 12, 2018

APPEARANCES:

    *Robert C. Nemo* **for Appellant**

**SHAW, J.**

**{¶1}** Defendant-appellant, Mandi Brumfield ("Mandi"), brings this appeal from the August 10, 2017, judgment of the Marion County Common Pleas Court, Family Division, altering the parties' custody arrangement by designating father-appellee, Steven Brumfield ("Steven"), residential parent of the parties' three children for school purposes, though Mandi remained as residential parent in all other respects. On appeal, Mandi argues that the trial court erred by failing to find a change in circumstances before altering the parenting arrangement, by failing to conduct an *in camera* interview with the parties' oldest child even though it was requested by Mandi, by finding Mandi in contempt with no motion pending, by lifting the temporary order that Steven's parenting time be supervised, and by ordering Justin Carley, Mandi's boyfriend, to have no contact with the children.

*Relevant Facts and Procedural History*

**{¶2}** Steven and Mandi were married on May 21, 2005. They had two children together: D.B., born in September of 2006 and C.B. born in December of 2008. Mandi also had one biological daughter that was born outside the marriage in October of 2003. That daughter, M.B., was adopted by Steven. Thus altogether the parties had three children.

**{¶3}** On December 16, 2014, Steven filed for divorce. On December 31, 2014, Mandi filed an answer and counterclaim also seeking a divorce. Although

there was fairly extensive litigation related to the divorce, the parties ultimately settled all of their disputed issues resulting in a final decree of divorce and a shared parenting plan, which was filed August 26, 2015.

{¶4} Shortly after the final decree and shared parenting plan was filed, Steven filed a "Motion for Reallocation of Parental Rights and Responsibilities," requesting that he be named residential parent and legal custodian of the parties' three children. (Doc. No. 158). A full hearing was held on the motion wherein fourteen witnesses provided testimony, including Steven and Mandi.[1]

{¶5} At the hearing both parties indicated that they wanted the shared parenting plan terminated and both parties desired to be named residential parent of the three children. In sum, the testimony indicated that since the final decree had been filed, there had been a complete breakdown of communication between the parties. Essentially the parties were not speaking to each other at all. Additionally, according to testimony provided, the parties' oldest child, M.B., had not been sent on visitation with Steven since an incident in early September of 2015 wherein Steven purportedly "jerked" M.B. out of her dance class. At the conclusion of the hearing, the matter was submitted to the trial court for a decision.

{¶6} On April 4, 2016, the trial court issued its judgment on the motion to reallocate parental rights and responsibilities. After stating that it had considered

---

[1] Our prior opinion summarized the testimony provided at that hearing. *See Brumfield v. Brumfield*, 3d Dist. Marion No. 9-16-26, 2016-Ohio-8395.

the evidence presented and the credibility of the witnesses who testified, the trial court determined that that the parties were "unable to cooperate and communicate with each other in order for them to participate in a shared parenting relationship." (Doc. No. 179). Further, the trial court stated that the parties had "no regard for how their behaviors are effecting the children," and that their "behavior * * * has been totally inappropriate and contrary to the best interest of their minor children." (*Id.*).

**{¶7}** Ultimately the trial court terminated the shared parenting plan, stating that it was in the best interests of the children. The trial court then named Mandi the residential parent for the children, including for school placement purposes, and gave Steven parenting time according to the local rule, with some modifications.[2] The trial court also placed a notable restriction on Mandi's boyfriend, Justin Carley, restricting him from being present when the children were in Mandi's care due to a "toxic" atmosphere that had been created as a result of his involvement with the parties. In addition, the trial court restricted the parties' children from using social media due to some issues that had arisen because of it, some of which were with regard to Justin Carley.

---

[2] The trial court also found both parties in contempt of the divorce decree for various reasons.

-4-

{¶8} Steven appealed the trial court's decision to designate Mandi as residential parent of the parties' children to this Court and we affirmed in *Brumfield v. Brumfield*, 3d Dist. Marion No. 9-16-26, 2016-Ohio-8395.

{¶9} While his appeal was pending in this Court, Steven filed multiple "Motion[s] to Show Cause," seeking to have Mandi found in contempt for violating the trial court's entry by continuing to have the parties' children in the presence of Justin Carley, and by permitting the children, specifically M.B., to use social media.

{¶10} On July 26, 2016, Steven filed a "Motion for Reallocation of Parental Rights and Responsibilities" due to, what he termed, Mandi's "continued and willful disregard" of the trial court's orders, particularly those related to Justin Carley. (Doc. No. 212).

{¶11} On July 27, 2016, Mandi filed a "Motion for Contempt" against Steven, arguing that he had failed to, *inter alia*, pay his court-ordered spousal support.[3]

{¶12} On October 24, 2016, the trial court appointed a guardian ad litem ("GAL") for the children.

{¶13} On November 22, 2016, Mandi filed a "Motion Requesting Removal of Restriction Regarding Justin Carley." (Doc. 226).

---

[3] This motion was later amended.

{¶14} On December 1, 2016, the GAL filed a "Motion for Psychological/Custody Evaluation" of both parties. That motion was promptly granted.

{¶15} On December 23, 2016, the trial court filed an "Agreed Entry Resolving Pending Contempt Motions." In the entry the parties indicated that they had resolved the pending contempt issues through the date of November 16, 2016. As part of this agreement, Mandi admitted that she permitted contact between Justin Carley and the parties' children in contravention of the trial court's orders. Steven also admitted that he failed to fulfill his financial obligations ordered by the trial court.

{¶16} On December 27, 2016, Mandi filed a "Notice of Intent to Relocate" with the children to Edison, Ohio, just outside of Marion, due to the martial residence being sold. (Doc. No. 237).

{¶17} On March 24, 2017, Mandi filed another motion to eliminate the restriction regarding contact between the parties' children and Justin Carley, who was termed in the motion as Mandi's "fiancé." (Doc. No. 241).

{¶18} On May 16, 2017, the psychological evaluation of Mandi and Steven that had been requested by the GAL was filed. It was performed by psychologist David Lowenstein, Ph.D. After reviewing his interviews with the parties and others,

and detailing various tests he administered, Dr. Lowenstein stated as follows in his

report.

> **[I]t is clear that neither party can adequately parent their children alone. Mandi has used [Justin] to 'fight' with Steve about parenting matters and as a result even Justin has become part of this custody battle even though he has no biological relationship with the children. Mandi allowed her daughter to change her name on Facebook to her boyfriend's name and did not reprimand her for doing so. Mandi also seems to have allowed things to happen that she was told to not allow such as continued contact between Justin and the boys. * * ***

> **Steve is clearly angry at Mandi and displays this anger whenever he seems to have any visual or verbal contact with her. Emails have been received where he is angry at what she is doing, how she is behaving and what she is preventing. This anger seems to justify his actions and then he seems to regret that it takes a toll on him and his relationship with the children. He also has done some things that have alienated his relationship with [M.B.], unfortunately. * * * I hope that * * * some semblance of a relationship can still be developed, but Steve needs to trust the expertise of the professionals that [M.B.] is working with and wait until they feel it is appropriate for him to be involved. Waiting for stability is not a strength that Steve has presently.**

> **\* \* \***

> **The [trial court] has tried to make some things stable by limiting the contact that the parents have with each other and allowing for only limited contact between Justin and the children. Unfortunately, even with these limitations things have not stabilized and it seems clear that this may never stabilize no matter what the costs are. As a result, this examiner recommends that the present arrangement for residential status remain in effect and that both parents share the parenting of the children in all decision-making**.

{¶19} Dr. Lowenstein then recommended that a parenting coach be involved and that the parties attend counseling. Dr. Lowenstein indicated that Steven should seek out someone who dealt with anger issues as Dr. Lowenstein felt that Steven's anger was interfering with his parenting and co-parenting. Dr. Lowenstein also recommended that Justin "step back and remove himself from this parenting arrangement" because he had clearly "overstepped his boundaries." Dr. Lowenstein stated that if Mandi continued to "allow this to occur then at that time there is no other option but for custody to change to Steve[.]"

{¶20} In May of 2017, allegations were made that Steven had struck one of the children in the throat while pressing the child about lying, specifically about having contact with Justin Carley. After the allegation, on May 24, 2017, the trial court filed a temporary order requiring Steven's parenting time to be supervised by his mother, Mary, who lived in the same residence. (Doc. No. 249). Though Steven seemingly admitted to slapping his son on the arm, he denied striking his son in the throat. Testimony in the record indicates that an investigation later determined that the allegations against Steven were unsubstantiated; however, Steven's parenting time continued to be supervised for the remainder of the proceedings.

{¶21} On May 30, 2017, Mandi filed another motion to relocate, indicating that she would be moving to Franklin County for more lucrative employment opportunities. (Doc. No. 250).

{¶22} On June 12, 2017, Steven filed an "Ex Parte Motion for Restraining Order" in an attempt to prevent Mandi from moving the children out of the school district where they had been attending school in Marion. (Doc. No. 255).

{¶23} On June 16, 2017, Mandi filed a notice of intent to relocate specifically to Hilliard, which would alter the children's school. (Doc. No. 256).

{¶24} On June 22, 2017, Steven filed an objection to Mandi's attempted relocation as the trial court was not having a hearing on the matter until the following month and Mandi indicated she would move in late June, before the trial court's hearing. Prior to any ruling being made, Mandi moved to Hilliard with the children.

{¶25} On June 26, 2017, Steven filed a proposed shared parenting plan.

{¶26} On July 21, 2017, the GAL filed her report. The GAL's report detailed her extensive involvement in this case including a number of interviews with the parties, their children, and various other individuals. The GAL seemed particularly concerned with the allegation of Steven striking one of the children, as she found the child credible in his story.

{¶27} After detailing both parents' failings, the GAL recommended that Mandi should remain residential parent of the children, that the children should attend school in Hilliard, where Mandi now lived, and that Steven's parenting time

should continue to be supervised by his mother until he completed individual counseling.

**{¶28}** On July 26-27, 2017, a final hearing was held on pending matters. Steven called a number of witnesses on his behalf, beginning with a psychologist he had seen after he was instructed by Dr. Lowenstein to get an evaluation for anger-related issues. Dr. Charles Gerlach testified that he evaluated Steven and he found Steven to be a psychologically healthy person. Dr. Gerlach also testified that Steven was not a danger to the children, and that he did not exhibit dangerous anger; rather, merely anger typical of someone in a custody battle.

**{¶29}** Dr. Gerlach's report, which was introduced as an exhibit at the final hearing, stated that he found no evidence of an anger problem with Steven. Dr. Gerlach indicated that he had reviewed Dr. Lowenstein's report several times noting "the various and often contradictory evaluations of Steven's personality characteristics[.]" (Plaintiff's Ex. 36). Dr. Gerlach found it puzzling that Dr. Lowenstein concluded that each parent was fit for parenting yet in need of assistance. Dr. Gerlach also testified that the GAL became upset with him during a phone call when Dr. Gerlach disagreed with her regarding Steven. Dr. Gerlach did acknowledge that he had only evaluated Steven and that he had not interviewed other individuals as Dr. Lowenstein had because it was not what he was asked to do.

{¶30} Steven also called Vicky Johnson who had been the GAL for Justin Carley's custody case. Johnson testified that after the trial court's last order in this case it was her understanding that Justin still had contact with at least M.B. There was also a reference to Johnson's concerns regarding a purported incident of Justin Carley and M.B. sleeping in the same bed.[4]

{¶31} Steven called his mother, Mary Brumfield, to testify, who had been supervising visits between Steven and the two children who were coming for visitation. Mary testified that Steven had lived with her since his divorce with Mandi. Mary testified that she did not want to keep supervising visitation between Steven and the children and that she felt it was unnecessary. Mary also testified that she had problems getting the children for visitation since Mandi moved to Hilliard. Mary noted that in her own observations she felt that the children often exaggerated their stories.

{¶32} Steven also testified on his own behalf. As to the May incident of alleged physical abuse of one of the children, Steven testified that he smacked one child in the arm after the child was lying and withholding information. Steven indicated that the child's own hand might have hit his throat but Steven testified he did not strike the child in his throat.

---

[4] Although this was summarily raised as a red flag there was essentially no other testimony about this issue.

{¶33} Steven also detailed an incident wherein the parties' oldest child was investigated and reprimanded for sending inappropriate pictures of herself to other students via social media. Steven testified that he did not learn of the incident through Mandi and that Mandi was not forthcoming with what was happening.

{¶34} In addition, Steven testified regarding various other difficulties he had with Mandi since the trial court's prior judgment.[5] He also indicated that he did not want the children's school changed to a school in Hilliard where Mandi lived, and that if the children changed their school his relationship with them would be further strained because of the distance. Steven also indicated he would be unable to coach the children's sports teams.

{¶35} In her case-in-chief, Mandi called Deborah Merold, who had counseled M.B. Merold testified that M.B. had an adjustment disorder. Merold testified that she was not made aware by Mandi or M.B. that M.B. had gotten into trouble for sending nude pictures of herself to another boy on social media, and that it was an issue that she definitely would have addressed with M.B. had she known. Merold's testimony indicated that M.B. was not ready to resume visitation with Steven.

---

[5] For example, Steven testified to an incident wherein one of the children was having trouble with his hands chafing. Steven purchased an ointment and sent it home with the child for his hands but Mandi threw it out the car window. Mary Brumfield also testified regarding this incident, indicating that Mandi threw the medicine in the yard and drove away.

{¶36} Mandi also called Jessica Rhodes, who was Steven's ex-girlfriend. Jessica testified that she had known Mandi for a long time and that Steven would say negative things about Mandi to her while they were together, including threatening to kill Mandi and Justin.

{¶37} Mandi testified on her own behalf, indicating that the children had been in contact with Justin despite the order, and that Justin had actually signed as M.B.'s father so that she could get her ears pierced. Mandi testified that she moved to Hilliard for a better job opportunity, and that she knew Steven was opposed but she moved anyway. She testified that she had not told the children about changing schools. Mandi testified that she thought Steven's visitation should remain supervised, and that she thought the restriction regarding the children being around Justin should be lifted as Steven had no restrictions on who he dated. Mandi also testified regarding various issues in dealing with Steven during the pendency of this case.

{¶38} The GAL called Mandi's mother to testify and the GAL also testified herself. The GAL testified that she was convinced that Mandi was not being totally truthful with her, and that she did not think Justin was a good influence. She testified that Justin's presence had led to alienation of the children. The GAL testified that Steven was still a long way from any type of reunion with M.B. to resume visitation with her.

{¶39} The GAL noted that although the allegation against Steven was found to be unsubstantiated, it still greatly concerned her. The GAL also stated that Mandi should have waited before she moved. Essentially though, the GAL reiterated her position in her report, stating that she felt the children should stay with Mandi, that they should be enrolled in Hilliard schools, and that Steven's parenting time should continue to be supervised. Following the GAL's testimony, the matter was submitted to the trial court.

{¶40} On August 2, 2017, after the final hearing had concluded, Mandi filed a "Motion for *In Camera* Interview" of M.B. (Doc. No. 271).

{¶41} On August 8, 2017, the trial court denied Mandi's motion for an *in camera* interview, finding that the final hearing was held and concluded on July 27, 2017, thus all the evidence had been taken and her motion was untimely.

{¶42} On August 10, 2017, the trial court filed its judgment entry on the matter. The trial court's entry began by noting that since its original judgment in April of 2016 the relationship between the parties had continued to deteriorate to the detriment of the children. The trial court went so far as to say that it had "considered removing all three children from both parents, based upon the negative environment created by the harmful and inappropriate behaviors of each parent while the children are in their respective care." (Doc. No. 274). The trial court indicated that it "refrained from their removal only because of the additional trauma

this would cause, beyond that which they have already experienced." (*Id*.). The trial court also stated that the parties "continue to place their anger and animosity for each other, ahead of the best interests of their children, since their [divorce]. It is clear these parents are unable to cooperate and communicate with each other, in any fashion, which would facilitate a shared parenting relationship, without counseling, parenting coordination and strict Orders requiring compliance." (*Id*.)

{¶43} The trial court then denied Steven's proposed shared parenting plan, ordered the parties and the minor children to attend counseling, and adjusted child support based on the parties' current income. In addition, the trial court found that it was in the best interests of the children to modify the prior parenting order to the extent that Steven should be designated residential parent for school placement purposes of the parties' children, and that the children should continue to attend River Valley Schools in Marion, where they had been attending school. The trial court terminated the temporary order requiring supervised visitation for Steven. Mandi remained residential parent of the children in all other respects.

{¶44} The trial court noted that it was aware of Mandi's relocation to Hilliard, but emphasized that it was done prior to the court's consideration of the issue. The trial court ordered that Mandi continue to refrain from having contact with Justin Carley while the children were in her care, and that Justin was not to be present at the children's home, social, or school events. Finally, the trial court also

found Mandi in contempt of its April 4, 2016, entry for continuing to allow contact

between Justin Carley and the children.

**{¶45}** It is from this judgment that Mandi appeals, asserting the following

assignments of error for our review.[6]

**Assignment of Error No. 1**
**The trial court erred by modifying its prior order and designating appellee as the residential parent for school purposes.**

**Assignment of Error No. 2**
**The trial court erred by denying appellant's motion to conduct an *in camera* interview of the parties' thirteen-year-old daughter.**

**Assignment of Error No. 3**
**The trial court erred in finding appellant in contempt for allowing the children to have contact with Justin Carley when there was no motion pending.**

**Assignment of Error No. 4**
**The trial court erred in ordering that appellant remain prohibited from contact with Justin Carley at all times the children are in her care and ordering Justin Carley not be in appellant's home or at social, school events or extra-curricular activities when the children are present.**

**Assignment of Error No. 5**
**The trial court erred in lifting its restriction that appellee's companionship time be supervised.**

*Standard of Review*

**{¶46}** "Custody issues are some of the most difficult decisions a trial judge

must make." *Vent v. Vent*, 3d Dist. Wyandot No. 16-12-05, 2012-Ohio-5946, ¶ 16.

---

[6] On September 6, 2017, Mandi filed a motion to stay the trial court's order pending appeal, but it was denied by the trial court.

Therefore, those decisions rest within the sound discretion of the trial court. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A trial court's decision regarding custody matters is subject to reversal only upon a showing of an abuse of discretion. *Flickinger* at syllabus. A trial court will be found to have abused its discretion where its decision is contrary to law, unreasonable, or grossly unsound. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, (1983); *Bruce v. Bruce*, 3d Dist. Marion No. 9-10-57, 2012-Ohio-45, ¶ 13.

{¶47} Trial courts are afforded such deference in these matters because "the trial judge is in the best position to view the demeanor, attitude, and credibility of each witness and to weigh the evidence and testimony." *Berry v. Berry*, 3d Dist. Hancock No. 5-14-06, 2014-Ohio-4874, ¶ 20, citing *Flickinger,* 77 Ohio St.3d at 418. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Flickinger.* at 419.

*First Assignment of Error*

{¶48} In Mandi's first assignment of error, she argues that the trial court erred by modifying its prior order and designating Steven as residential parent for school purposes of the parties' children. Specifically, Mandi argues that the trial court did not explicitly find a change in circumstances pursuant to R.C.

3109.04(E)(1)(a), and that it did not adequately address each of the best interest factors in this case.

Change in Circumstances

{¶49} Under R.C. 3109.04(E)(1)(a), before a trial court can modify a prior decree allocating parental rights and responsibilities it must find that a change in circumstances occurred, and then it must find that the modification of the order is necessary to serve the best interest of the children. While a trial court does not have to use the explicit language "change in circumstances" it must be clear from the record that the trial court applied the appropriate factors. *See Nigro v. Nigro*, 9th Dist. Lorain No. 04CA008461, 2004-Ohio-6270, ¶ 6. A change "must be a change of substance, not a slight or inconsequential change;" however, the statute does not require a "substantial" change. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶50} In its entry in this case, the trial court did not use the explicit words "change in circumstances." However, the trial court noted a number of things indicating that a change had occurred since its prior decree. First, the trial court found that "the relationship between these parties has continued to deteriorate to the determinant of the minor children." (Doc. No. 274). Second, Mandi moved to Hilliard, prior to the court's consideration of the issue, which the trial court noted in its entry. The move, according to testimony and the GAL's report, would require

the children to attend a different school. Third, and finally, Mandi had continuously allowed contact between Justin Carley and the children despite the trial court's order to the contrary. Even according to Dr. Lowenstein's evaluation, if Mandi continued to permit contact between Justin Carley and the children the trial court would have no choice but to award custody to Steven. Here, the trial court did not go so far as that, but it did alter the residential parent for school purposes to Steven.

{¶51} While it certainly would be a better practice for the trial court to explicitly state what it found to be a change in circumstances, we cannot find that the trial court erred here given the statements that were made in its entry and given the evidence contained in the record.

Best Interests

{¶52} In its entry on the matter, the trial court determined that it was "in the best interests of the minor children to modify" its prior order by designating Steven as residential parent of the children for school purposes. On appeal, Mandi argues that the trial court's best interest finding was an abuse of discretion because it was contrary to the GAL's recommendation and because the trial court failed to adequately address the best interest factors.

{¶53} At the outset we note that the trial court did agree with the GAL in some respects. The GAL recommended that Mandi remain residential parent and the trial court agreed. The trial court did, however, disagree with the GAL's

recommendation that Mandi should remain residential parent for school purposes and the GAL's recommendation that the children should attend a new school in Hilliard.

**{¶54}** Notably, a trial court is not required to follow the recommendation of a GAL. *Koller v. Koller*, 2d Dist. Montgomery No. 22328, 2008-Ohio-758, ¶ 24. Moreover, there is testimony to support the trial court's finding, given that Steven presented some evidence that the Hilliard schools may have graded more poorly in certain areas than the children's current school and that the move to a new school would only further strain the children's relationship with Steven. While there was contrary testimony as well, we certainly could not find that the trial court's determination was arbitrary or capricious such that it amounted to an abuse of discretion.

**{¶55}** As to Mandi's argument that the trial court failed to adequately address the best interest factors of R.C. 3109.04(F), the trial court did explicitly make a best interest finding and it was supported by the record. Therefore, Mandi's first assignment of error is overruled.

*Second Assignment of Error*

**{¶56}** In Mandi's second assignment of error, she argues that the trial court erred by denying her motion for an *in camera* interview of M.B., which was made after the final hearing concluded. Specifically, Mandi argues that R.C.

3109.04(B)(1) *requires* a trial court to conduct an *in camera* interview if one is requested.

**{¶57}** Revised Code 3109.04(B)(1), which is at issue here, reads in pertinent part, "upon the request of either party [a trial court] * * * shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." Mandi contends that because the statute says that a trial court "shall" interview a child if an interview is requested, and because the statute has no timing component, the trial court erred in denying her motion even though it was made after the evidence had been presented.

**{¶58}** In support of her argument, Mandi cites *Scassa v. Scassa*, 7th Dist. Carroll No. 688, 1998 WL 404209,[7] wherein the Seventh District reversed a trial court that declined to grant a motion for an *in camera* interview of a child after the interview had been repeatedly requested by a party. *Scassa* is readily distinguishable from this case as it involved a situation where requests for the interview were made *multiple* times and *before* the final hearing was conducted. Here the request was not made *at all* until *after* the final hearing concluded.

**{¶59}** Here, Mandi had ample time during the pendency of this case to raise the issue or request an *in camera* interview of M.B. We find that this case is actually

---

[7] In her brief Mandi actually incorrectly cites a later *Scassa* case, *Scassa v. Scassa*, 7th Dist. Carroll No. 03-CA-788, 2004-Ohio-1536. We will presume she meant to cite the older *Scassa* case listed in the text because it deals with the relevant issue.

more similar to *Schmitt v. Ward*, 9th Dist. Summit No. 27805, 2016-Ohio-5693, wherein it was determined that even when a parent had filed a motion for an *in camera* interview under 3109.04(B)(1), the parent effectively waived the issue where the parent did not renew the request at any point during the final hearing. *See also Miracle v. Allen*, 9th Dist. Lorain No. 05CA008843, 2006-Ohio-5063, ¶ 6. Had Mandi made a timely filing in this case *before* the close of evidence her assignment of error might be more compelling. Moreover, there can be little impact in the trial court's failure to interview M.B. in this case as M.B.'s interests were already represented by the GAL. Thus for all of these reasons Mandi's second assignment of error is overruled.

*Third Assignment of Error*

**{¶60}** In Mandi's third assignment of error, she argues that the trial court erred by "finding her in contempt" in its final judgment entry. Specifically, Mandi argues that the following provision of the trial court's entry was erroneous.

> **9. This Court finds Defendant/Mother has failed to prohibit contact by Justin Carley with the minor children as Ordered in the April 4, 2016, Judgment Entry, and she is found in Contempt of same. Defendant/Mother shall be provided an opportunity to purge this Contempt finding by no further contact with the children by Justin Carley. Failure to comply will result in consideration by this Court, upon proper Motion by Plaintiff/Father, for appropriate sanctions against Defendant/Mother for non-compliance with this Finding of Contempt.**

Mandi contends that the trial court erred in this finding because there was no contempt motion pending against her as it was resolved by a prior judgment entry.

**{¶61}** Contrary to Mandi's arguments, a continued reading of the trial court's entry also shows that the trial court found Steven in contempt for failing to provide support as previously ordered. Similar to Mandi's contempt regarding Justin Carley, these issues were both already settled through the agreed judgment entry filed months prior. Thus the trial court's statements appear to be nothing more than reiterations of what already occurred.

**{¶62}** Nevertheless, even if the trial court's statement regarding Mandi was a "new" contempt finding, there is no sanction provided and the finding actually requires Steven to file another motion to be enforced. Thus we fail to see what remedy could even be provided here. For all these reasons, Mandi's third assignment of error is overruled.

### Fourth Assignment of Error

**{¶63}** In Mandi's fourth assignment of error, she argues that the trial court erred by ordering that she remain prohibited from contact with Justin Carley at all times the children are in her care and in ordering Justin Carley not to be present at social or school events when the children were present.

**{¶64}** Notably, even the GAL in this case recommended that Mandi refrain from having Justin Carley around the children. In a prior assignment of error Mandi

argued *for* the trial court to use one of the recommendations of the GAL, and now she argues against one of the GAL's recommendations.

**{¶65}** Here, however, the GAL's recommendation was supported by the history between the parties and Dr. Lowenstein's report, which indicated that Justin Carley needed to remove himself from the parenting issues between these parties because he was causing alienation and animosity. Mandi may feel that the children get along well with Justin but the fact remains that essentially everyone else involved with these parties feels that he is "toxic" to any type of normal parenting relationship between Mandi and Steven. The children feel the need to lie about seeing Justin and Mandi continues to bring him around the children in repeated violation of the court orders. Given the history of this case we cannot find that the trial court abused its discretion with regard to its orders related to Justin Carley. Therefore, Mandi's fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶66}** In Mandi's fifth assignment of error, she argues that the trial court erred by lifting its restriction that Steven's parenting time be supervised. In support Mandi cites the testimony of Steven's ex-girlfriend who indicated that Steven had said he wanted to kill Mandi and Justin, and Dr. Lowenstein's report that indicated Steven's anger issues interfered with his ability to parent and co-parent.

{¶67} Contrary to Mandi's arguments, the trial court was presented with testimony that Steven did not have an anger problem from Dr. Gerlach; rather, Steven merely had anger indicative of someone going through a turbulent custody battle. In addition, the trial court was presented with testimony that the incident that led to Steven's parenting time being supervised in the first place was found to be "unsubstantiated." The trial court also heard Steven directly testify about the incident and was free to judge his credibility. Given the evidence presented in the record, we cannot find that the trial court abused its discretion, therefore, Mandi's fifth assignment of error is overruled.

*Conclusion*

{¶68} For the foregoing reasons Mandi's assignments of error are overruled and the judgment of the Marion County Common Pleas Court, Family Division, is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and PRESTON, J.J., concur.**

**/jlr**