[Cite as *In re M.O.E.W.*, 2018-Ohio-3512.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

In re M.O.E.W.

Court of Appeals No. OT-17-022

M.W.

Trial Court No. 2007-JUV-000035 JUVG

      Appellant

v.

K.M.

**DECISION AND JUDGMENT**

      Appellee

Decided: August 31, 2018

* * * * *

Amanda A. Andrews, for appellant.

Geoffrey L. Oglesby, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** This is an appeal from the judgment of the Ottawa County Court of

Common Pleas, Juvenile Division, denying appellant's, M.W., motion for reallocation of

parental rights and responsibilities. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} Appellant is the father of the minor child, M.O.E.W., who was born in 2006. Appellee, K.M., is the mother. The litigation between the parties over the custody of the child began in 2007. Relevant here, on November 20, 2013, the parties agreed to a consent judgment entry whereby mother was designated the residential parent and legal custodian of the child, with father to have regular visitation rights in accordance with the court's standard schedule.

{¶ 3} The present matter was initiated two years later, on October 6, 2015, when father filed a motion for reallocation of parental rights and responsibilities, seeking joint custody of the child. Thereafter, on April 6, 2016, father filed an amended motion for reallocation of parental rights and responsibilities. The matter proceeded to a hearing before a magistrate on September 6, 2016.

{¶ 4} At the September 6, 2016 hearing, during father's direct examination of mother, the magistrate stopped the questioning, and ruled that she was going to find that a change of circumstances existed, necessitating the appointment of a guardian ad litem for the child. The magistrate did not permit father to conclude his presentation of evidence, and did not permit mother to present any evidence at all. The magistrate's findings were preliminarily memorialized in an order on September 6, 2016, and an order containing findings of fact was entered on September 28, 2016.

{¶ 5} On September 16, 2016, mother filed a motion to set aside the magistrate's September 6, 2016 order on the basis that she was not afforded her legal right to

2.

challenge father's evidence, or to call any witnesses on her own behalf. On October 13, 2016, the trial court denied that motion, finding that none of the magistrate's September 6, 2016 orders were dispositive of a claim or defense of any of the parties, and that mother failed to state with particularity her reasons to set aside the magistrate's orders. Notwithstanding that, on October 24, 2016, the trial court entered its judgment rejecting the magistrate's September 28, 2016 decision, and setting the matter for a de novo hearing on father's motion for reallocation of parental rights and responsibilities.

{¶ 6} The de novo hearing on father's motion was held before the trial court on April 17, 2017, and May 18, 2017. At the hearing, father called mother as his first witness. Mother testified to a broad range of issues, beginning with the circumstances of her older son's death from a drug overdose, and the impact that death had on M.O.E.W. Mother testified that her son was living with her for approximately a year, and was in recovery and was clean at the time. During that time, her son would watch M.O.E.W. by himself on a handful of occasions. Mother stated that her son moved out because he thought his presence would be an issue in the custody proceedings over M.O.E.W. When he left, he relapsed, and overdosed on drugs. Mother testified that M.O.E.W. was present at the hospital for the three days after her brother overdosed, and was there when he died. Mother testified that M.O.E.W. was close to her brother, and is now actively involved in speaking engagements where she talks about the impact of drugs and addiction on families. Mother stated that M.O.E.W. likes to speak, and that it is a good way for her to heal.

3.

**{¶ 7}** Mother next was asked about M.O.E.W.'s performance at school, to which she replied that M.O.E.W. was doing well. Father then produced an exhibit where M.O.E.W. only received two points on a fractions test. Father also produced evidence of an instance where M.O.E.W. was caught flipping over another student's test during an exam, and evidence that she had received one or two strikes for behavior this year. Father then asked about M.O.E.W.'s attendance at school, and mother confirmed that M.O.E.W. had missed 20 days of school, been tardy five times, and was taken out of school early four times. Mother testified, however, that all of the absences were excused with a doctor's note, and that M.O.E.W. had several bouts of strep throat, which required her to have her tonsils removed. Mother also acknowledged that in the prior school year, M.O.E.W. was either absent, tardy, or left school early 30 times, but she testified that each of those were excused as well.

**{¶ 8}** The questioning then transitioned to mother's romantic relationships. Mother testified to having dated approximately six different men since November 2013. On occasion, some of the men have watched M.O.E.W. for a day or two, or have transported M.O.E.W. to and from school or appointments. On at least one occasion, one of the men who drove M.O.E.W. to or from school had a suspended driver's license. In addition, some of the men had previous criminal convictions.

**{¶ 9}** Father then asked mother about an incident where mother recorded an argument that she had with M.O.E.W. before school. The audio recording was played for the court. On the recording, mother is heard stating that M.O.E.W. is making problems

4.

for her in court because M.O.E.W. is throwing a fit and refusing to get ready for school on time. Mother testified that she recorded M.O.E.W. on the advice of her counselor so that the recording could be played back and be used to constructively teach M.O.E.W. how to improve her behavior.

{¶ 10} In addition to those topics, mother also briefly testified regarding her decision to occasionally leave M.O.E.W. home alone during the daytime for approximately one hour. Mother was also asked about a picture which shows her riding in a car that was returning from a festival, and it appears that there was an open container in the car. Further, mother testified that she has moved three times since the November 2013 order, and that while she has mainly been employed at two jobs, she has had a number of other side positions. Additionally, mother testified that she is under financial stress from the issues involving her son as well as her attorney fees from the litigation regarding the custody of M.O.E.W.

{¶ 11} Father also testified as his only other witness. He testified that he believed the change of circumstances included M.O.E.W.'s performance and attendance at school, her behavior, mother's ability to effectively parent, and the recent death of mother's older son. In particular, father expressed concern with M.O.E.W.'s behaviors in showing a desire for a boyfriend, and he believes that mother's lifestyle is negatively influencing M.O.E.W. in that regard. He also testified that he was concerned that mother's parenting style will result in M.O.E.W. travelling down the same path as her older son. Father additionally testified about the visitation schedule. He stated that shortly after the

5.

November 2013 order, the parties informally modified the schedule, which resulted in him having additional time with M.O.E.W. However, approximately one month before the hearing, mother announced that they would return to the schedule contained in the court order.

{¶ 12} For her case, mother called three witnesses. The first was Geoffrey Halsey, the principal at M.O.E.W.'s school. Halsey verified the number of absences that M.O.E.W. has had, but stated that she has always been in compliance with the school's policies. Halsey also testified that M.O.E.W. does fine in school, has not had any issues as far as her social or emotional development, and is ready to move on to the middle school level of education. Further, M.O.E.W. has not had any behavioral issues of note.

{¶ 13} Mother next called M.O.E.W.'s therapist, Alison Campbell, who was qualified as an expert witness in the area of child counseling. Campbell testified that M.O.E.W. was diagnosed with adjustment disorder with anxiety, but commented that she is a well-adjusted little child. Campbell elaborated that M.O.E.W. is frustrated by the ongoing conflict between her parents, and M.O.E.W. has expressed her fear that staying with mother is going to harm her relationship with father. Campbell noted that M.O.E.W. is a happy little girl, that she is doing well, and that she loves both of her parents and enjoys spending time with them. Campbell also relayed four things that M.O.E.W. wanted Campbell to convey on her behalf: "I want to stay with my mom;" "I want to be able to see my dad when I want to;" "I want them to get along better;" and "I want my dad to cooperate more, and I want to stay out of court. I'm done with it. I'm

6.

over it." Finally, Campbell testified that she has no problem with M.O.E.W. speaking to heroin groups about her brother's death, and that she does not see mother's relationships having a negative impact on M.O.E.W.

{¶ 14} Lastly, mother testified on her own behalf. Most of mother's testimony provided her perspective on topics that had already been discussed at length during the hearing. Mother did provide new testimony, however, to a panic attack that she had the previous week that required her to go to a hospital. She testified that it occurred after a stressful day dealing with collateral issues relating to her son's death, but emphasized that M.O.E.W. was never put in any danger despite father's suggestion to the contrary.

{¶ 15} Following the hearing, the trial court entered its order on July 5, 2017, denying father's motion for reallocation of parental rights and responsibilities. In its decision, the trial court found that father had failed to prove that a change in circumstances had occurred since the court's prior order in November 2013.

## II. Assignments of Error

{¶ 16} Father has timely appealed the trial court's July 5, 2017 judgment, and now asserts two assignments of error for our review:

1. The trial court erred in allowing appellee to object to magistrate Danita Gilbert-Conway presiding over the September 6, 2016 hearing, having previously waived same.

2. The trial court abused its discretion in denying appellant-father's motion to modify the allocation of parental rights and responsibilities.

7.

## III. Analysis

{¶ 17} In his first assignment of error, father intimates that mother's motion to set aside the magistrate's September 6, 2016 order was based on her belief that the magistrate was prejudiced against her. Father contends that since mother has not objected to the magistrate presiding over the proceedings for the past four years, she has waived her right to remove the magistrate, and her motion to set aside the magistrate's decision should have been overruled.

{¶ 18} We find that father's argument is based on a faulty premise. First, we note that mother's motion to set aside does not allege prejudice or bias, but instead is based on the grounds that she was not afforded her legal right to present evidence in her favor. Moreover, the record reflects that mother's motion to set aside was, in fact, denied by the trial court. Thus, we find no merit to father's argument.

{¶ 19} Even still, the trial court rejected the magistrate's decision and set the matter for a de novo hearing, as it was permitted to do under Juv.R. 40(D)(4)(b), which provides, "Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." In this case, we find no error in the trial court's decision to set the matter for a new hearing where the parties were not permitted to present all of their evidence in the hearing before the magistrate.

{¶ 20} Accordingly, father's first assignment of error is not well-taken.

8.

**{¶ 21}** In his second assignment of error, father contends that the trial court abused its discretion when it found that father failed to prove a change of circumstances.

**{¶ 22}** Pursuant to R.C. 3109.04(E)(1)(a),

**{¶ 23}** The court shall not modify a prior decree allocating parental rights and responsibilities for the care of the children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶ 24}** Before analyzing whether a modification to the allocation of parental rights and responsibilities is in the child's best interest, the court must first determine whether a change in circumstances has occurred. *Perz v. Perz*, 85 Ohio App.3d 374, 376, 619 N.E.2d 1094 (6th Dist.1993). "The clear intent of [this requirement] is to spare children from a constant tug of war between their parents who would file a motion for change of

9.

custody each time the parent out of custody thought he or she could provide the children a 'better' environment." *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶ 25} The Supreme Court of Ohio has held that the change in circumstances "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Further, the phrase "change in circumstances," generally denotes "an event occurrence, or situation which has a material and adverse effect upon a child." *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604-605, 737 N.E.2d 551 (7th Dist.2000). "In determining whether a 'change' has occurred * * * a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion." *Flickinger* at 418, citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).

{¶ 26} In support of his argument that there was a change of circumstances, father recites several factors: deplorable living conditions, failing to get the child to school, fluctuation in the child's grades, yelling at the child relative to court issues, leaving the child home alone, leaving the child with questionable men, the death of mother's older son, and interference with his parenting time. In its decision, the trial court addressed many of these factors.

{¶ 27} First, relating to the "deplorable living conditions," the trial court found that although mother owes thousands of dollars for past legal services as a result of

10.

having to defend against father's filings and in order to protect her parental rights, she is planning to pay off those legal bills once she receives an insurance payment relating to the death of her son. Moreover, the trial court found that M.O.E.W. is well-cared for. She has appropriate nutrition, clothing, and medical care. She has adequate and safe housing. She is not deprived or abused, and even enjoys some luxuries such as a cell phone and being involved in sports.

{¶ 28} Next, regarding M.O.E.W.'s performance in school, the trial court found that although M.O.E.W. has missed numerous days, her absences were excused and she has made up the work that was missed. Further, the court found, based on Halsey's testimony, that M.O.E.W. does not have any social issues, is personable and positive, and is a successful student ready to move on to middle school.

{¶ 29} The trial court then discussed the audio recording of mother speaking to M.O.E.W. and telling her that "You're posing more problems in court than what I need. This is going to pose a problem now because you want to throw a fit every morning." The court found that mother had been encouraged by M.O.E.W.'s counselor to record those conversations for use in therapy. Further, the court noted that this single reference to court proceedings did not constitute a change in circumstances.

{¶ 30} Next, regarding leaving M.O.E.W. home alone, the court found that there was no evidence that M.O.E.W. was too young or lacked the maturity to be left on her own for an hour or so after school. There was also no evidence that M.O.E.W. ever hurt herself or got into trouble when she was home alone.

11.

{¶ 31} As to mother's relationship with numerous men, the court found that none of the men ever hurt or threatened mother or M.O.E.W. Further, the court found that mother testified that she would never knowingly permit M.O.E.W. to be supervised by someone with a criminal record, or to be transported by someone without a driver's license. In addition, Campbell testified that mother's romantic life has not had a deleterious effect on M.O.E.W., and that the most important people in M.O.E.W.'s life are mother and father, and everyone else is inconsequential.

{¶ 32} Finally, regarding the death of mother's son, the trial court found that his difficulties with substance abuse began prior to the November 2013 order. The trial court also found that while he was living in mother's home, the son appeared to have his addiction under control, and that his drug use was antithetical to mother's values and expectations. In addition, the court found that M.O.E.W. was very close with her brother, and was emotionally impacted by his death. Notably, mother, Halsey, and Campbell all commented that M.O.E.W.'s presentations regarding the impact of drugs and addictions are beneficial to her as she works through her grief. The court determined that M.O.E.W.'s grief was not connected to custodianship, and there was no evidence that she would have been less impacted had she been living with father when her brother died.

{¶ 33} As his final factor, father argues that mother has interfered with his parenting time, and that such interference constitutes a change in circumstances. However, the record shows that while the parties had at one point mutually agreed to informally modify the visitation schedule, and that mother no longer wishes to follow the

12.

modification, father has always had, at a minimum, his court-ordered visitation. Furthermore, there is no evidence in the record that mother interferes with M.O.E.W.'s relationship with father, or speaks poorly of father to her. Thus, we do not find that this factor constitutes a change of circumstances warranting a new custody order.

{¶ 34} After reviewing all of the evidence, the trial court found that father had failed to prove a change in circumstances based on the individual factors or as a whole. Our own review of the record leads us to conclude that none of the purported changes are a change of substance. Furthermore, we find that the trial court's detailed analysis was neither arbitrary, unreasonable, nor unconscionable. Therefore, we hold that the trial court did not abuse its discretion in finding that father had failed to demonstrate a change in circumstances.

{¶ 35} Accordingly, father's second assignment of error is not well-taken.

## IV. Conclusion

{¶ 36} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. Father is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                          _____
                                                                    JUDGE
Thomas J. Osowik, J.

Christine E. Mayle, P.J.                          _____
CONCUR.                                                     JUDGE

                                                             _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.