[Cite as *Canada v. Blakenship*, 2018-Ohio-4781.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

KATRINA CANADA,

    PLAINTIFF-APPELLANT,           CASE NO. 9-18-16

    v.

GARY BLANKENSHIP,           O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 16 DR 0064

Judgment Affirmed

Date of Decision:   December 3, 2018

APPEARANCES:

    *Robert C. Nemo* for Appellant

    *G. Scott McBride* for Appellee

**SHAW, J.**

{¶1} Mother-Appellant, Katrina Canada ("Katrina") appeals the April 10, 2018 judgment of the Marion County Court of Common Pleas, Family Division, granting a Motion for Contempt and Modification of Parental Rights and Responsibilities filed by Father-Appellee, Gary Blankenship ("Gary"). On appeal, Katrina argues: that the trial court erred in finding a change in circumstances occurred to modify the parties' prior custody order; that the trial court abused its discretion when it only permitted Katrina to have two hours of supervised visitation per week with the parties' child in its new custody order; that the trial court erred when it failed to appoint a guardian ad litem; and that the trial court allowed impermissible hearsay evidence to be presented at the hearing on Gary's motion.

*Relevant Facts and Procedural History*

{¶2} The parties were at one time married. In 2015, G.B. was born as issue of the marriage. The parties subsequently filed for a dissolution of their marriage and on June 20, 2016, the trial court granted the dissolution and adopted the parties' parenting plan, under which Katrina was named residential parent and Gary was given visitation with G.B. every other weekend, as well as additional times throughout the year for holidays and vacations.

{¶3} On February 17, 2017, Katrina filed a Motion to Modify Parental Rights and Responsibilities claiming her older daughter, J.C., from another relationship,

was "extremely apprehensive" being around Gary and requesting that an order directing all parenting time exchanges relating to G.B. occur at the CareFit Center in Marion, Ohio. The record established that underlying this motion were Katrina's allegations that Gary sexually abused J.C. The trial court subsequently issued an order granting Katrina's request. The record further indicated that Katrina filed a petition for a Civil Protection Order ("CPO") against Gary. Said petition was later dismissed.

{¶4} On March 24, 2017, Gary filed a Motion for Modification of Shared Parenting Plan/Parenting Time seeking additional parenting time than previously agreed upon by the parties in the prior parenting plan.

{¶5} On June 16, 2017, the parties agreed to modify the existing custody order, giving Gary additional parenting time on a rotating two week basis, with exchanges to occur at the Marion Meijer. This resulted in the parties having close to equal parenting time with G.B. The parties continued to exchange parenting time pursuant to the agreed judgment entry, however Gary's parents facilitated the exchanges with Katrina so that the parties did not have to interact with one another.

{¶6} On or about October 13, 2017, Katrina failed to meet Gary's parents at the agreed upon point of exchange. It later came to light that Katrina was alleging that Gary had molested two-year old G.B. and refused to permit him to have contact with G.B. The record indicates that Katrina took G.B. to be examined by a Sexual

Assault Nurse Examiner ("SANE"), who found no evidence of trauma. Law enforcement and children services investigated Katrina's allegations against Gary and found them to be unsubstantiated.

{¶7} On October 30, 2017, Gary filed a Motion for Order to Have Law Enforcement Assist & Enforce the Court's Parenting Order, claiming that Katrina had denied him parenting time and made false allegations against him. The same day, Gary also filed a Motion for Contempt and Modification of Parental Rights and Responsibilities, seeking to be designated the residential parent of G.B.

{¶8} On November 8, 2017, the trial court conducted a hearing on temporary orders, where both Katrina and Gary testified. Gary testified to instances when Katrina unilaterally denied him his parenting time with G.B. Katrina admitted to denying Gary his parenting time in contravention of the agreed judgment entry based on her claim that Gary had sexually abused G.B. and her older daughter, J.C. Gary denied the accusations. Gary further testified that Katrina had made similar accusations regarding J.C. and prior male paramours while they were married. Gary also expressed concern about other members of Katrina's family fabricating allegations of sexual abuse by him on his daughter, and testified that he feared for G.B.'s mental and emotional well-being. Gary requested that he be granted temporary custody of G.B. and that Katrina exercise supervised visitations through CareFit in Marion.

{¶9} On November 13, 2017, the trial court issued temporary orders granting Gary temporary custody of G.B. and permitting Katrina to have weekly one-hour supervised visitations at CareFit. In a separate judgment entry, the trial court also issued an Order of Referral to Family Services Coordinators, so that an investigation and report could be completed. The Family Service Coordinator's report was filed on February 6, 2018.

{¶10} On March 1 and 22, 2018, the trial court conducted a contested hearing on the matter, where several people testified including Gary, Katrina, several members of their respective families, the law enforcement officer who investigated Katrina's accusations that Gary sexually abused G.B., and the SANE who examined G.B.

{¶11} On April 10, 2018, the trial court issued a judgment entry finding Katrina in contempt for violating the parties' prior custody order and granting Gary's motion to modify the order. Specifically, the trial court designated Gary as G.B.'s residential parent and legal custodian. The trial court permitted Katrina to exercise two-hour weekly supervised visitations with G.B. at CareFit.

{¶12} Katrina filed this appeal, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT A CHANGE IN CIRCUMSTANCES HAD OCCURRED COMMENCING JUNE 16, 2017.**

**ASSIGNMENT OF ERROR NO. 2**

**EVEN IF APPELLEE PROVED A CHANGE IN CIRCUMSTANCE, THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING APPELLANT ONLY TWO HOURS PER WEEK OF SUPERVISED VISITATION WITH THE PARTIES' MINOR CHILD.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ERRED BY FAILING TO APPOINT A GUARDIAN AD LITEM.**

**ASSIGNMENT OF ERROR NO. 4**

**THE TRIAL COURT ERRED BY ALLOWING HEARSAY EVIDENCE.**

{¶13} For ease of discussion, we elect to address the first and second assignments of error together.

*First and Second Assignments of Error*

{¶14} In these assignments of error, Katrina claims that the trial court abused its discretion in finding that a modification of the parties' prior custody order was supported by the evidence in the record.

*Standard of Review*

{¶15} In reviewing the trial court's custody determination, we are mindful that "[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The

knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody." *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25; *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Relevant Authority*

{¶16} Under R.C. 3109.04, a trial court in determining whether a modification of a decree allocating parental rights and responsibilities is appropriate must conduct two-step analysis. First, the trial court must determine whether a change in circumstances has occurred since the prior decree was issued. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 33, 36. R.C. 3109.04(E)(1)(a). With regards to finding a change in circumstances, R.C. 3109.04(E)(1)(a) states:

> **The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior**

**decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**

**(i)   The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.**

**(ii)   The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.**

**(iii)   The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

{**¶17**} R.C. 3109.04(E)(1)(a).  While a trial court does not have to use the explicit language "change in circumstances" it must be clear from the record that the trial court applied the appropriate factors.  *Brumfield v. Brumfield*, 3d Dist. Marion No. 9-17-35, 2018-Ohio-901, ¶ 49, citing *Nigro v. Nigro*, 9th Dist. Lorain No. 04CA008461, 2004-Ohio-6270, ¶ 6.  Notably, a change in circumstance "must be a change of substance, not a slight or inconsequential change;" however, the statute does not require a "substantial" change.  *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{**¶18**} If the trial court determines that a change in circumstances has occurred, the trial court must then determine whether a modification of the prior decree is in the best interest of the child. The factors that a trial court must consider in this determination are listed in R.C. 3109.04(F)(1), which provides as follows:

**(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:**

**(a)  The wishes of the child's parents regarding the child's care;**

**(b)  If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d)  The child's adjustment to the child's home, school, and community;**

**(e)  The mental and physical health of all persons involved in the situation;**

**(f)  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g)  Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h)  Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an**

**adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(i)    Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)    Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

*Evidence at the Hearing*

{¶19} The following evidence was adduced from the two-day evidentiary hearing on Gary's Motion for Contempt and Modification of Parental Rights and Responsibilities. It is undisputed by the parties that they amicably co-parented G.B. from the dissolution of their marriage in June of 2016 to January of 2017, when Katrina refused to facilitate Gary's parenting time with G.B. for the first time.

{¶20} Gary testified that in early January 2017, a few days prior to his scheduled parenting time with G.B., he had made a post on Facebook which included disparaging remarks about Katrina's sudden marriage to a man, whom

Gary claimed to be Katrina's first cousin. Gary recalled the reaction of Katrina and her family members; specifically that "the whole family blew it up." (Tr. at 187). A day or two later when Gary attempted to meet Katrina to exchange parenting time, Katrina refused to allow Gary to have G.B. Katrina admitted to denying Gary his parenting time, but claimed that she did so based upon accusations made by her older daughter, then-seven-year-old J.C., that Gary had sexually abused her.

{¶21} Gary vehemently denied the accusations and recalled that J.C. had made similar accusations against a former boyfriend of Katrina's. Gary testified that during their marriage, Katrina had told him that J.C. admitted to fabricating the allegations about Katrina's prior boyfriend and Katrina told J.C. "it's not right to lie about people." (Tr. at 183). Gary recalled that Katrina also claimed that she and her sisters had been molested as children. At the hearing, Katrina denied making these statements to Gary.

{¶22} Nevertheless, Katrina maintained that she withheld G.B. from Gary for her protection and offered to pay for Gary to take a lie detector test to prove he did not abuse J.C. As a result, Gary did not have contact with G.B. for several weeks until the parties went to court in the middle of March 2017. At that time, the trial court dismissed Katrina's request for a CPO against Gary and Gary was given limited parenting time with G.B. until a pending motion for custody modification was resolved.

**{¶23}** In May of 2017, while the parties' custody proceedings were pending, and following the determination by law enforcement and children services that Katrina's claims against Gary regarding J.C. could not be substantiated,[1] Katrina's sister, Twila, authored a post on Facebook titled in all capitalized letters: THIS POST IS REGARDING GARY BLANKENSHIP, FEEL FREE TO SHARE. (Def. Ex. D). In this post, Twila stated "It's truly a sad day when a seven year old girl speaks up to admit she was raped and the rapist gets no punishment." (Id.). The post continues to outline the accusation that Gary sexually abused J.C. and ended with "But you'll get your karma you piece of shit, I hope you rot in hell. And again, THIS IS ABOUT GARY BLANKENSHIP, HE DID UNTHINKABLE THINGS TO A LITTLE SEVEN YEAR OLF [sic] GIRL AND GETS TO WALK AWAY WITH NO CHARGES, HOW SAD, KEEP YOUR CHILDREN AWAY FROM HIM!!!!!!!!!! And to add to all of this. This man works for health companies that provide for individuals with disabilities, so he is alone with people with disabilities, probable [sic] doing the same thing!" (Id.).

**{¶24}** Another one of Katrina's sisters, Mariah, shared the post "publically" with the comment "Everyone please share this and get this horrible man locked up! He still gets his own child, HIS DAUGHTER, after raping a seven year old girl.

---

[1] Exhibits admitted into the record demonstrate that in January of 2017, Katrina filed a report with children services and the Marion County Sheriff's Office based upon the accusations that Gary sexually abused J.C. A forensic interview with J.C. was completed. However, the record indicates that the investigation of the allegations against Gary did not result in criminal charges.

PLEASE get justice for this little girl." (Id.). In a comment underneath the post, Katrina's mother, Wendy, posted a picture of Gary and wrote "Here's his pic since there's so many Gary Blankenship [sic]." (Id.). The post garnered comments from others threatening to kill or inflict physical harm on Gary. Katrina's mother also reported the unsubstantiated accusations to Gary's employer.

{¶25} Despite the behavior of Katrina's family members, Gary signed the June 16, 2017 Agreed Judgment Entry granting the parties shared custody on a rotating two-week basis based on his belief that "[w]ell, honestly, I thought we were over all of this. That's why I signed the shared parenting plan." (Tr. at 291). Gary explained that he did take precautions in light of Katrina's and her family members' conduct. Specifically, his parents handled all of the exchanges with Katrina, and his mother, with whom he lived, changed, diapered and bathed G.B. to preemptively avoid the opportunity for Katrina to make sexual abuse allegations against him.

{¶26} However, on or about October 13, 2017, Katrina again unilaterally denied Gary his parenting time with G.B. when she refused to meet Gary's parents to facilitate the exchange. Katrina claimed that she had observed strange behavior from G.B., appearing to convey pain in genital area, and suspected that Gary had been molesting G.B. Katrina took G.B. to the hospital where SANE Nurse, Annetta Sipes, conducted a sexual assault exam. Nurse Snipes' report was admitted as an exhibit and she also testified at the hearing.

{¶27} Nurse Sipes recalled great difficulty trying to get the two-year-old to cooperate and enlisted the help of Katrina to conduct the exam. Nurse Sipes testified that she initially noticed some redness of the hymen, which gave her concern and she administered the SANE kit which "is a collection different swabs * * * from head to toe." (Tr. at 15). However, Nurse Sipes testified that she did not observe any evidence of trauma. Based on her exam, Nurse Sipes could neither conclusively confirm nor deny that sexual abuse to G.B. had occurred.

{¶28} The record indicates that during the investigation of her allegations of sexual abuse of G.B., which ultimately ended with the local Prosecutor's Office declining to file criminal charges, Katrina continued to deny Gary all contact with G.B. until October 30, 2017 when the trial court granted Gary's motion seeking the assistance of law enforcement to compel Katrina to comply with the June 16, 2017 shared custody order. The same day, Gary filed a motion to effectively terminate the shared custody agreement between the parties and designate him residential parent and legal custodian of G.B.

{¶29} Gary expressed that his primary concern prompting him to seek the change of custody was G.B.'s mental and emotional health. He stated that he feared that as G.B. grew older Katrina and her family would continue to perpetrate false accusations against him in the presence of G.B. or directly to her. Therefore, Gary testified that he believed it is in G.B.'s best interest for him to be named her

residential parent. However, Gary also testified to his belief that it is in G.B.'s best interest to maintain a relationship with Katrina and that she should be granted weekly supervised visitations.

{¶30} At the hearing, Katrina remained steadfast in her claim that Gary had sexually abused J.C. and G.B., despite the lack of evidence to substantiate the claims. This sentiment was reiterated in the testimony of Katrina's mother and two sisters, who admitted to posting content on social media accusing Gary of raping J.C. However, Katrina, her mother, and sisters all claimed at the hearing that they had never said anything derogatory about Gary to others or in front of G.B., or discussed the accusations with her. Katrina also claimed that she would follow any future custody order issued by the trial court.

{¶31} The parties admitted as a joint exhibit Katrina's records from Marion Area Counseling Center which indicated that she was treated for anxiety, trauma, inattention, and sleep problems. These issues manifested in excessive worry, panic attacks, and impulsivity. Katrina was prescribed Buspar at the time. Gary testified that he was with Katrina when she first started counseling and that Katrina initially took the medication but kept it in a lock box under her bed. He recalled that Katrina's mother found the medication and flushed it down the toilet, expressing that Katrina needed church over medication. Gary described Katrina as constantly overprotective of J.C., "she always thought somebody was going to hurt her

daughter." (Tr. at 181). Katrina denied Gary's recollection of her mother disposing of the medication but admitted she no longer took the medication. However, she claimed that it was simply prescribed to her to help with her sleep problems.

{¶32} The evidence at the hearing also established that from the time of the temporary orders, G.B. exclusively lived with Gary and his parents in their home. According to the testimony, G.B. is very bonded to Gary's mother who watched the child while Gary worked. Gary also had regular parenting time with his older children from another marriage, with whom G.B. also has forged a strong relationship.

{¶33} The report of the Family Service Coordinator was admitted as the Court's exhibit at trial. In the report, Family Service Coordinator's interview with Katrina reflected that Katrina felt a considerable amount of distain toward Gary. For example, "Mother cannot think of any strengths regarding father's parenting skills because 'he raped my child.' * * * She said that she doesn't think that father should be a part of [G.B.'s] life after he molested her." (Court Ex. 1 at 2). Katrina denied making these statements to the Family Service Coordinator when confronted with them at the hearing. In conducting her assessment, the Family Service Coordinator also observed the strong bond between G.B., her father, and her paternal grandparents. The Family Service Coordinator made the following recommendation to the trial court:

**It is the recommendation of the Family Service Coordinator that [G.B.] continue to be in the care and custody of her father. Mother has demonstrated that she will not allow visitation with father regardless of a court order. Mother has a strong belief that father sexually abused [G.B.]. Marion Child Welfare investigation regarding this sexual abuse was unsubstantiated. Mother is insisting that a GAL complete an investigation. During the course of this assessment mother challenged the Family Service Coordinator on almost everything that was discussed. Mother said that the final pretrial was going to be continued because she wants a GAL to protect [G.B.'s] rights.**

**It is also recommended that visitation between mother and [G.B.] continue at Care.fit. [G.B] has adjusted to visiting with her mother at Care.fit. Care.fit continues to provide supervision at a Tier IV level which allows for continued supervision throughout the entire visit.**

(Id. at 7).

*Discussion*

A.    *Change in Circumstances*

{¶34} On appeal, Katrina claims that the trial court abused its discretion in finding that a change in circumstances had occurred since the prior custody decree to warrant a modification of the parties' custody order. Specifically, Katrina contends that the trial court erred in considering evidence regarding Katrina's and her family's conduct on social media accusing Gary of "raping" J.C. since such conduct occurred prior to the parties entering into the June 16, 2017 Agreed Judgment Entry. Katrina also argues that Gary simply demonstrated that the

accusations made against him by her and her family members negatively affected him, as opposed to having a materially adverse effect on G.B.

**{¶35}** At the outset we note that the parties and their counsel continually referred to the June 16, 2017 Agreed Judgment Entry as a "shared parenting plan" throughout the hearing before the trial court and Gary's motion effectively requested a termination of the sharing parenting agreement. With regard to the termination of a shared parenting plan, "nothing in R.C. 3109.04(E)(2)(c) requires the trial court to find a change of circumstances in order to terminate a shared parenting agreement." *Curtis v. Curtis*, 2d Dist. Montgomery No. 25211, 2012-Ohio-4855, ¶ 7. Therefore, when terminating a shared parenting plan, rather than modifying it, the trial court does not have to find that a change in circumstances occurred. *See Drees v. Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197; *Warner v. Thomas*, 3d Dist. Shelby No. 17-14-04, 2014-Ohio-3544, ¶¶ 9-10. Instead, the trial court must find that "shared parenting is not in the best interest of the children." R.C. 3109.04(E)(2)(c). Accordingly, insofar as the parties considered their prior custody arrangement a "shared parenting plan," the trial court was not required to consider the threshold issue of a change in circumstances. This may explain why the record does not contain an express finding of such by the trial court.

**{¶36}** In any event, we find that the record supports the determination that a change in circumstances had occurred in this case. Here, the record indicates that

after the prior custody order was in place, Katrina made accusations that Gary had sexually abused G.B. Moreover, her testimony at trial demonstrated that she continued to believe that Gary had molested G.B., despite an investigation by law enforcement and children services determining Katrina's accusations to be unsubstantiated. Other courts have held that the making of a false sexual abuse accusation has been deemed to be "(in and of itself) a 'factual circumstance.' The making of such a false accusation, subsequent to an initial award of custody, is clearly a 'change' in circumstances irrespective of any detrimental impact on the minor child. Such change frequently deprives both the child and the noncustodial parent of visitation." *In re Russell*, 4th Dist. Washington No. 98CA525 at *5 (Aug. 4, 1999), quoting *Beekman v. Beekman*, 96 Ohio App. 3d 783, 788-89 (4th Dist. 1994). "Moreover, we do not believe it requires any great leap in logic to find that a false accusation of sexual abuse by one parent against another always has a detrimental impact." *In re Russell, supra* at *5.

**{¶37}** In addition, Katrina's continued and willful interference with Gary's parenting time constituted a sufficient change in circumstances for the trial court to consider the modification of the prior custody order. *See*, *e.g.*, In re M.O.E.W., 6th Dist. Ottawa No. OT-17-022, 2018-Ohio-3512, ¶ 33; *In re F.M.B.*, 4th Dist. Washington No. 10CA28, 2011-Ohio-5368, ¶ 22; *see also Pathan v. Pathan*, 2d Dist. Montgomery No. 18254, *3 (Sept. 15, 2000) (recognizing that continued

interference with a non-custodial parent's visitation can constitute a change in circumstances even if the interference was raised in connection with a prior unsuccessful custody motion); *see Beckman*, *supra*, at 789 ("When a court makes a custodial decision, it makes a presumption that the circumstances are such that the residential parent will promote both maternal and paternal affection * * * Where the evidence shows that after the initial decree the residential parent is not living up to the court's presumption and is attempting to poison the relationship between the ex-spouse and the children, this is a change of circumstances that warrants a modification of the prior custody decree."). Therefore, to the extent that the decision of the trial court was required to be based upon a change in circumstances, we do not find an abuse of discretion in the determination of the trial court based on the record before it.

*B. Best Interest*

{¶38} Katrina also argues that the trial court abused its discretion in determining that granting her two-hour weekly supervised visitations is in G.B.'s best interest. Specifically, Katrina directs us to her testimony that she would honor all further court orders and testimony from both her and her family members that they would refrain from making disparaging remarks about Gary and from discussing the accusations of sexual abuse in front of G.B.

{¶39} In its judgment entry issuing the new custody order, the trial court addressed each best interest factor listed in R.C. 3109.04(F)(1). The trial court specifically found the evidence in the record demonstrating the lengths that Katrina and her family members took to disparage and malign Gary, in spite of two investigations resulting in a lack of evidence to support the accusations perpetuated by Katrina and her family, Katrina's propensity to make false accusations of sexual abuse against Gary, and Katrina's pattern of willfully and unilaterally denying Gary his court-ordered parenting time with G.B. to be persuasive in its determination to designate Gary G.B.'s residential parent and to give Katrina limited supervised visitations.

{¶40} With regards to Katrina's and her family members' representations at the hearing, the trial court specifically found their testimony "not credible." (Doc. No. 75 at 4). As previously noted, the trial court was in the best position to evaluate the credibility of the witnesses who testified in this matter. Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *In re A.M.*, 4th Dist. Athens No. 17CA43, 2018-Ohio-2072, at ¶ 42, quoting, *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶41} In addition, the report of the Family Service Coordinator corroborated the testimony from Gary and his mother that G.B. had forged strong bonds with the

members in that household and appeared to be well-adjusted living in the home. The Family Service Coordinator further observed Katrina's extreme negativity toward Gary and a lack of willingness to cooperate or abide by the court's order.

{¶42} Based upon our review of the record, we find the trial court's decision was supported by the manifest weight of the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in designating Gary the residential parent and legal custodian of G.B. Moreover, in light of the evidence in the record demonstrating Katrina's apparent lack of respect for the trial court's orders and unwillingness to facilitate Gary's parenting time, we do not find that the trial court abused its discretion in only granting her supervised visitations. Therefore, the first and second assignments of error are overruled.

*Third Assignment of Error*

{¶43} In her third assignment of error, Katrina argues that the trial court erred in failing to appoint a guardian ad litem to the case. At the outset, we note that R.C. 3109.04(B)(2)(a) which governs appointment of guardians ad litem when modifying parental rights and responsibilities provides, in part, that "[i]f the court interviews any child pursuant to division (B)(1) of this section * * * [t]he court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem." Here, a review of the record reflects that due to G.B.'s young age the trial court did not interview her in chambers. "However, in accordance with the plain language of the

statute, where the trial court does not meet with the child before entering its judgment, it is not required to appoint a guardian ad litem." *Ralston v. Ralston*, 3d Dist. No. 9-08-30; 2009-Ohio-679, ¶ 22; *See*, *also*, *Feltz v. Feltz*, Mercer App. No. 10-04-04, 2004-Ohio-4160 at ¶ 5 (stating that although appellant requested a GAL, the court was not required to appoint one under R.C. 3109.04 because the court did not meet with the children before entering judgment).

{¶44} Moreover, the record demonstrates that even though Katrina initially requested the appointment of a guardian ad litem to the case prior to the submission of the Family Services Coordinator's report, she did not renew her request for a guardian ad litem before the evidentiary hearing or object to the submission of the Family Services Coordinator report on that basis. Thus, the matter being purely within the discretion of the trial court, and absent an interview of the child, we cannot conclude that the trial court abused its discretion in failing to appoint a guardian ad litem. Therefore, the third assignment of error is overruled.

*Fourth Assignment of Error*

{¶45} In her fourth assignment of error, Katrina argues that the trial court erred in allowing impermissible hearsay to be presented at the evidentiary hearing. Specifically, Katrina points to Gary's testimony regarding J.C.'s admission to fabricating allegations of sexual abuse in the past, testimony related to Katrina's sister's disparaging Facebook post regarding Gary, and Gary's testimony regarding

phone records. Although Katrina admits that the testimony which she now claims to be hearsay was not objected to at the hearing, she nevertheless contends any reliance of the trial court on such evidence constitutes plain error.

{¶46} For his part, Gary argues that each piece of evidence pointed to by Katrina was not hearsay. Specifically, Gary argues that the testimony regarding J.C.'s statements and the phone records were offered to rebut Katrina's prior testimony accusing Gary of sexually abusing J.C., and claims that she had unsuccessfully attempted to make consistent contact with G.B. after the temporary custody orders were issued in this case, but Gary's family never returned her calls. Furthermore, Gary argued that Katrina's sister's Facebook posting was not offered for the truth of the matter asserted—i.e., to prove that Gary sexually abused J.C., but instead to show a pattern of conduct, motive, and state of mind of Katrina and her family members, whom Katrina permitted G.B. to be around on a constant basis. *See* Evid. R. 803(3).

{¶47} In our review of the record, we find no plain error in the admission of the disputed evidence even if it were hearsay. Where a trial judge acts as the finder of fact, as in this case, a reviewing court should be reluctant to overturn a judgment on the basis of the admission of inadmissible testimony, unless it appears that the trial court actually relied on such testimony in arriving at its judgment, because the

trial judge is presumed capable of disregarding improper testimony.  *In re T.M., III*, 8th Dist. Cuyahoga No. 83933, 2004-Ohio-5222, ¶ 24.

{¶48} Katrina offers no evidence which demonstrates that the trial judge relied on any of the alleged hearsay in arriving at her judgment.  Likewise, we find no evidence in the record that overcomes the presumption that the judge disregarded any evidence that was not properly before her.  Accordingly, the fourth assignment of error is overruled.

{¶49} Based on the foregoing, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**